# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

***

MARIA G. JUAREZ,

           Plaintiff,

vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

           Defendant.

Case No: 2:13–cv–02154–JCM–VCF

**REPORT & RECOMMENDATION**

This matter involves Plaintiff Maria Juarez's appeal from Defendant Carolyn W. Colvin's final decision denying Plaintiff social security benefits. (Compl. (#3) at 2: 21-24[1]). Plaintiff claimed a disability based on lower back pain, retinopathy, diabetic neuropathy, asthma, diabetes mellitus (type II), bilateral knee malalignment, degenerative bone disease, degenerative disk disease, bilateral wrist pain, sleep interference, and depression, along with other mental disorders. (Admin. Rec. at 31 & 39). Before the court is Plaintiff's Motion to Remand (#15). In response, Defendant filed a Cross Motion to Affirm (#16) and an Opposition to Plaintiff's Motion (#17). Plaintiff filed a Reply to Defendant's Opposition. (#18). For the reasons stated below, the court recommends granting Plaintiff's Motion to Remand (#15) and denying Defendant's Cross Motion to Affirm (#16).

## BACKGROUND

On June 28 and 29, 2010, Plaintiff Maria Juarez applied for a period of disability, disability insurance benefits, and supplemental security income. (Admin. Rec. at 16 & 69-70). Plaintiff's application was denied initially on November 24, 2010 and upon reconsideration on July 13, 2011. (*Id.*

---

[1] Parenthetical citations refer to the court's docket or the administrative record.

at 69-70 & 87-93). Administrative Law Judge ("ALJ") Norman L. Bennett held a hearing on August 6, 2012. (*Id*. at 48-68). On September 4, 2012, the ALJ issued an unfavorable decision finding that Plaintiff had not been disabled since the alleged onset date of February 14, 2008. (*Id*. at 23-41). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 23, 2013. (*Id*. at 1-3). On November 21, 2013, Plaintiff commenced this action for judicial review by filing an Application for Leave to Proceed *in forma pauperis.* (#1). The Application was granted (#2), and the Complaint was filed on August 12, 2014. (#3).

## STANDARD OF REVIEW

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. CONST. amend. V. Social security applicants and recipients have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). Where, as here, the Commissioner of Social Security renders a final decision denying a person benefits, the District Court must review the Commissioner's decision to determine whether it accords with the Due Process Clause. *Eldridge*, 424 U.S. at 340; 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The District Court's review is limited. The court examines the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1193 (9th Cir. 2004); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) (defining more than "a mere scintilla" of evidence). If the evidence supports more than one interpretation, the court must uphold the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This means that the Commissioner's decision will be upheld if it has any support in the record. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating that the court may not reweigh evidence, try the case *de novo*, or overturn the Commissioner's decision if the evidence preponderates against it).

## DISCUSSION

Plaintiff appeals the Commissioner's denial on two grounds. First, Plaintiff argues that the ALJ's Residual Functional Capacity ("RFC") Assessment lacks the support of substantial evidence because the ALJ allegedly erred by (1) finding that Plaintiff's mental impairments were not severe (Pl.'s Mot. to Remand (#15) at 6: 12-14); (2) not including even mild mental impairments in the RFC evaluation and a hypothetical to the Vocational Expert (*id.* at 8: 3-6); and (3) not finding a more restrictive RFC for Plaintiff based on physical impairments (*id.* at 9: 6-10). Second, Plaintiff argues that the ALJ's credibility evaluation lacks the support of substantial evidence because the ALJ allegedly failed to articulate sufficient reasons to discount Plaintiff's testimony. (*Id.* at 11: 23-24).

### I.  Determining Residual Functional Capacity

Plaintiff's first basis for appealing the ALJ's decision concerns the ALJ's determination regarding Plaintiff's RFC. The court's analysis begins with the governing law.

#### A.  Legal Standard

To qualify for benefits under the Social Security Act, a claimant must demonstrate his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical

3

or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). When making this determination, the Commissioner engages in a five step inquiry.

Before proceeding to step four, the Commissioner must determine the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1520(e); 416.920(e). Residual functional capacity is a function-by-function assessment of the claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In laymen's terms, it is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a). Residual functional capacity is comprised of a claimant's physical abilities, mental abilities and other impairments. *Id*. In determining a claimant's residual functional capacity, the ALJ "must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted); *see also Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (holding that whether substantial evidence supports a finding is determined from the record as a whole). All impairments, "even those that are not severe," must be considered by the ALJ in creating the RFC. 20 C.F.R. § 404.1545.

### B.     Whether Plaintiff's Mental Impairments Were Severe

Plaintiff argues that the ALJ improperly gave significant weight to medical opinions by Paglini, Psy.D., and Dr. Roldan and little weight to the medical opinion by Dr. Kotler in determining Plaintiff's mental RFC. (Pl.'s Mot. to Remand (#15) at 6:23-8:2). The court does not agree, and finds that the ALJ had substantial evidence to support his characterization of Plaintiff's mental impairments. As Plaintiff argues (Pl.'s Mot. to Remand (#15) at 6:23-8:2), the ALJ was presented with conflicting evidence of

Plaintiff's mental state by Paglini, Psy.D., Dr. Kotler, and Dr. Roldan. The ALJ discusses each medical opinion in his determination and clearly gives his reasons for affording great weight to Roldan, significant weight to Paglini, and little weight to Kotler. (Admin. Rec. at 37-40). Roldan found that Plaintiff's mental symptoms did not warrant limitations in the first three broad functional areas in the Listing of Impairments: daily living, social functioning, and concentration, persistence, or pace. (*Id.* at 39). The medical opinion of Paglini noted "[o]nly slight impairment in the ability to interact appropriately with supervisors, co-workers, and the public." (*Id.* at 38). Kotler found mild limitations in daily living and moderate limitations in social functioning and concentration, persistence, or pace. (*Id.*) The ALJ gave greater weight to Roldan and Paglini because their evaluations were largely consistent with the medical record, including the "very limited treatment record for mental health issues." (*Id.* at 38-39). When the evidence can reasonably lead to more than one conclusion, the court must uphold the determination of the ALJ. *Burch*, 400 F.3d at 679. This court lacks the authority to substitute its own judgement for that of the ALJ, and must uphold his decision if it has any support in the record. *See Bowling*, 36 F.3d at 434.

### C. Whether Mild Mental Impairments Were or Should Have Been Included in the RFC and Vocational Expert Hypothetical

Plaintiff argues in the alternative that if the "ALJ properly found that Ms. Juarez only had mild mental limitations…he was required to include these limitations in the RFC assessment and hypothetical to the vocational expert." (Pl.'s Mot. to Remand (#15) at 8: 3-6). Once a claim survives Step 2, the ALJ will "consider all of [claimiant's] medically determinable impairments of which [the ALJ is] aware, including [claimant's] medically determinable impairments that are not 'severe'" under Step 2. 20 C.F.R. § 404.1545.

Plaintiff is correct that the ALJ was required to consider Plaintiff's mental limitations during the RFC evaluation. However, Plaintiff's argument that the ALJ failed to do so is incorrect. The ALJ went through a lengthy discussion of Plaintiff's mental condition during his RFC evaluation, as discussed in the previous section. (Admin. Rec. at 37-40). Plaintiff's own Motion points out instances in the ALJ's RFC evaluation where the ALJ referred to Plaintiff's mental condition. (#15 at 7: 5-6, 16-18). The one unpublished case that Plaintiff cites dealt with the case of an ALJ who excluded a mental limitation from "consideration" during the RFC evaluation. *Hutton v. Astrue*, 2012 WL 6040731, *1 (9th Cir. December 05, 2012). The ALJ in this case considered Plaintiff's mental limitation, so Plaintiff's argument does not apply.

Plaintiff next argues that the ALJ (1) found that Plaintiff had a mild mental limitation and (2) incorrectly failed to include any mental limitation in the hypothetical to the Vocational Expert. (Pl.'s Mot. to Remand (#15) at 8: 3-6). Plaintiff is correct that the ALJ did not include any mental limitations in the hypothetical to the Vocational Expert. The ALJ asked about "An individual who could lift 20 pounds occasionally and ten pounds frequently; this person could…sit, stand and walk up to six hours each cumulatively in an eight hour day; but they would be limited to occasional postural…all postural positions." (Admin. Rec. at 67). These are all limitations based on Plaintiff's physical condition. The Vocational Expert testified that this hypothetical person could perform Plaintiff's past relevant work. (*Id.*)

Plaintiff is also correct that if the ALJ found even a mild mental limitation during his RFC evaluation, he was required to include that limitation in the hypothetical to the Vocational Expert. "An ALJ may rely on a vocational expert's testimony that is based on a hypothetical that 'contain[s] all of the limitations that the ALJ found credible and supported by substantial evidence in the record.'" *Ghanim v.*

*Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)).

The ALJ's determination is ambiguous on whether Plaintiff had a mild mental limitation. In his step 2 analysis, the ALJ found that Plaintiff "demonstrated mild limitations in concentration, persistence or pace." (Admin. Rec. at 29). However, he was clear that this finding applied in Step 2 of his analysis, and that the mental RFC "assessment used at steps 4 and 5…required a more detailed assessment by itemizing various functions contained in the broad categories" of Step 2. (*Id.*)

In determining Plaintiff's mental RFC, the ALJ stated that "the record in its entirety suggested *no more than* mild limitation in concentration, persistence, or pace." (Admin. Rec. at 38) (emphasis added). The ALJ found several factors that "called into question [Plaintiff's] allegations of mental impairment," such as a lack of mental health treatment in the record and Plaintiff's failure to list mental illness as a medical issue on her initial Disability Report. (*Id.*)[2] The ALJ concluded that Plaintiff's alleged mental impairments were "non-severe" and "did not appear to interfere with her ability to perform all basic work activities or her past job." (*Id.*) However, the ALJ also made this finding: "[Plaintiff's] allegations of pain warranted a limitation to mild limitation in concentration, persistence, or pace, but no other limitation was necessitated in consideration of the record in its entirety." (Admin. Rec. at 40). The meaning of the phrase "limitation to mild limitation" is unclear, but it appears that the ALJ found that Plaintiff had a mild mental limitation despite the ALJ's other findings regarding Plaintiff's credibility and ability to work.

This court cannot definitively state whether or not the ALJ found that Plaintiff's allegations of a mild mental disability were credible and supported by substantial evidence in the record. The ALJ's

---

[2] The ALJ's determination that Plaintiff was not entirely credible will be discussed more thoroughly in part II of the Discussion section.

findings, construed in the ALJ's favor, are ambiguous. This ambiguity is not harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (stating that "while the ALJ's five-step analysis is not completely clear, we find any error in this regard to be harmless…[because] the ALJ gave [Plaintiff] the benefit of the doubt."). If the ALJ had posed a mild mental limitation in his hypothetical to the Vocational Expert, even though his explicit findings on the matter were ambiguous, there would be no prejudice to the Plaintiff. The hypothetical to the Vocational Expert would have contained all substantiated, and possibly even unsubstantiated, limitations, which would have made the evaluation favorable to the Plaintiff. However, the ALJ posed no mental limitations in his hypothetical to the Vocational Expert. (Admin. Rec. at 67). While this would be acceptable if the ALJ clearly found that Plaintiff had no mental limitations, mild or otherwise, this finding does not clearly appear on the record.

      The ALJ's ambiguous mental RFC determination is based on an ambiguous record, as already discussed when evaluating the ALJ's determination that Plaintiff's alleged mental limitations are non-severe. In cases of ambiguous records, this court must uphold the ALJ's determination. *Burch*, 400 F.3d at 679. However, this is impossible to do if the court cannot decipher what the ALJ's determination actually is. The ALJ's findings on whether Plaintiff has a mild mental limitation are critical to Plaintiff's case, because these findings are a part of the hypothetical to the Vocational Expert. The ALJ relied on the Vocational Expert's testimony in making his final determination as to whether Plaintiff is disabled. (Admin. Rec. at 40). Because the ALJ's findings are ambiguous, this court recommends that the ALJ's determination be remanded for clarification on the issue of whether Plaintiff has mild mental limitations that must be part of the hypothetical posed to the Vocational Expert. Should the ALJ clarify that Plaintiff has mild mental limitations, these limitations will have to be posed to a Vocational Expert in a new administrative proceeding.

### D.     Whether Plaintiff's Physical Impairments Required a More Restrictive RFC

The Plaintiff also argues that the ALJ erred in not finding a more restrictive RFC applied to the Plaintiff in his evaluation of her physical limitations. (Pl.'s Mot. to Remand (#15) at 9: 7-9). As stated previously, the court must uphold the ALJ's decision if it has any support in the record. *See Bowling*, 36 F.3d at 434. The court will not remand the ALJ's decision merely based on Plaintiff restating elements of the record that support her allegations. (Plaintiff's Mot. to Remand (#15) at 9-11). The ALJ also cites many parts of the record that support his determination. (Admin. Rec. at 26-41). Plaintiff attempts to undermine the support for the ALJ's decision with two main arguments.

Plaintiff argues that the ALJ's reliance on Dr. Kamal's opinion is improper because Dr. Kamal did not give a diagnosis regarding Plaintiff's knees. (Pl.'s Mot. to Remand (#15) at 10: 2-4). As Defendant points out (Def.'s Cross Mot. to Affirm (#16) at 8: 22-24), Dr. Kamal stated that there "was no evidence of deformity or swelling of any joint." (Admin. Rec. at 37). In addition, he found that the range of motion was within normal limits and muscle strength was 5/5 in both the upper and lower extremities. (*Id.*) "There was no evidence of muscle atrophy, focal paralysis, or other finding, which could reasonably suggest that the claimant could not sit for six of eight hours in a workday. While not specifically listing each joint that he examined, Dr. Kamal's opinion provides substantial support for the ALJ's determination of Plaintiff's RFC.

Plaintiff also argues that the ALJ's reliance on Dr. Henry's opinion is improper because Dr. Henry failed to "cite specific facts upon which her conclusions are based." (Pl.'s Mot. to Remand (#15) at 10: 13-15). This is incorrect. As Defendant points out (Def.'s Cross Mot. to Affirm (#16) at 9: 13-14), Dr. Henry cited to the medical record in making her conclusion. In Dr. Henry's report (Admin. Rec. at 456-463), under the "Additional Comments" section, Dr. Henry wrote "See narrative." (*Id.* at 463). In the Development Summary Worksheet (*Id.* at 489-495), two notes are made in the narrative by "AHE"

on May 10, 2011, the same day as on Dr. Henry's report. (*Id.* at 463 & 492-493). The two notes cite specific facts such as the issues Plaintiff claimed to be having (back pain, L knee pain, asthma), Plaintiff's history of surgery and recovery ("5 wks after surgery, ambulating without cane"), and her performance at the exam ("normal strength…Normal gait"). (*Id.* at 492-493). Though the connection between Dr. Henry's opinion and the narrative is obscure, the narrative provides specific facts that Dr. Henry based her opinion on. Therefore, Dr. Henry's opinion provides substantial support for the ALJ's determination of Plaintiff's RFC.

### E.      Conclusion on Whether to Remand Based on the ALJ's RFC Determination

The court finds substantial support for the ALJ's decision that Plaintiff's mental limitations are non-severe and the ALJ's determination of Plaintiff's physical RFC. However, the court finds that the ALJ's findings on Plaintiff's mental RFC are ambiguous. Therefore, the court recommends that Plaintiff's Motion to Remand (#15) be granted for clarification and, if necessary, further findings regarding whether Plaintiff has mild mental limitations, and the impact of these limitations on a determination of disability.

## II.     Evaluating Plaintiff's Credibility

Next, Plaintiff argues that the ALJ did not give the requisite clear and convincing reasons to find that Plaintiff's testimony was not credible. The credibility determination must be legally sufficient for the ALJ's decision to be upheld.

### A.      Legal Standard

The ALJ must engage in a two-step analysis when evaluating credibility: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain or other symptoms alleged; and, (2) if the individual has satisfied the first step of the test with no evidence of malingering, the ALJ may only reject the individual's testimony

about the severity of the symptoms by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal citations omitted).

### B.     Whether the ALJ Articulated Sufficient Reasons to Find Plaintiff was not Credible

Plaintiff argues that the ALJ did not have substantial evidence to support his credibility determination regarding Plaintiff's testimony. (Pl.'s Mot. to Remand (#15) at 11-14). The court disagrees. The ALJ made several explicit findings on Plaintiff's credibility. (Admin. Rec. at 23-46).

Plaintiff does not cite to any specific credibility determination by the ALJ or give any reason why the determination was incorrect. (Pl.'s Mot. to Remand (#15) at 11-14). Plaintiff merely makes a generalized assertion that, "In discounting Ms. Juarez's credibility, the ALJ cites to a lack of objective findings to support the complaints." (*Id.* at 14: 1-2). However, "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 68.

The ALJ did not cite solely to objective medical findings in his credibility determination. (Admin. Rec. 30-39). The ALJ gave six specific findings to support his conclusion that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms were not substantially credible." (*Id.* at 30). First, the ALJ found that the Third Party Function Report filled out by Plaintiff's partner weighs against Plaintiff's credibility. (*Id.* at 31-32). It indicated that Plaintiff's daily living activities were only minimally impacted by her alleged impairments. (*Id.*) Second, the ALJ found that Plaintiff's failure to list mental illness as a medical issue on her initial Disability Report

"seriously called into question her allegations." (*Id.* at 38). Third, the ALJ found that Plaintiff's performance during the consultative examination "in the below average range of intelligence" suggested a lack of effort on her part because of her past school history, including an A/B average and graduation from high school. (*Id.*) Fourth, the ALJ found that,

> "Overall, insofar as the claimant alleges symptoms and functional limitations that would have precluded her from performing the activities described in the residual functional capacity, specifically her allegations regarding her ability to work, such allegations were disproportionate to the objective findings of the medical record, inconsistent with the medical opinion evidence, exaggerated, and not fully credible…She did have numerous complaints from a multitude of alleged impairments. However, these impairments did not appear to interfere with her ability to perform all basic work activities or her past jobs. This factor posed a serious question as to the credibility of her allegations."

(*Id.*) Fifth, the ALJ "rejected [Plaintiff's] assertion that she could not perform household chores, in view of the fact that she could remain 'busy'…and perform a plethora of other daily tasks." (*Id.* at 39). Sixth, the ALJ found that Plaintiff's "lack of mental health treatment certainly weighed against her credibility, as well." (*Id.*) The ALJ stated that, "If, in fact, the claimant's anxiety and depression were as severe as alleged, she would have actively sought treatment on a more regular basis." (*Id.* at 40).

The Plaintiff also makes a general argument that the ALJ did not specifically "identify which complaints of Maria Juarez are not credible." (Pl.'s Mot. to Remand (#15) at 14: 2-3). As listed above, the ALJ discussed several specific complaints by Plaintiff in his credibility determination. (Admin. Rec. at 30-39). It is possible that the Plaintiff is trying to argue that the ALJ made implicit credibility determinations, disregarding Plaintiff's testimony without explicitly giving his reasoning. However, Plaintiff does not cite to a single representation by Plaintiff that the ALJ might have implicitly found to not be credible. The court cannot make Plaintiff's arguments for her. The ALJ's determination is facially consistent with his explicit credibility determination. The ALJ accepts Plaintiff's representations about her ability to engage in only occasional "balancing, stooping, kneeling, crouching, crawling, and

climbing" (*Id.* at 37), and includes the limitation in the hypothetical to the Vocational Expert (*Id.* at 67). Despite Plaintiff's testimony about her limitation on sitting, standing, or walking for extended periods of time (*Id.* at 61), she also testified that she does not "lay down during the day." (*Id.* at 62). That is consistent with the ALJ's ruling that Plaintiff can cumulatively sit for six hours in an eight-hour workday and cumulatively stand and/or walk for six hours in an eight-hour workday. (*Id.* at 30).

### C. Conclusion on Whether to Remand Based on the ALJ's Credibility Determination

Plaintiff has failed to show how the ALJ's credibility determination did not meet the legal standard. The ALJ gave clear and convincing reasons, linked to specific complaints, to find the Plaintiff was not fully credible. Because the ALJ's credibility determination was proper, Plaintiff's argument that the ALJ failed to give adequate reasons is rejected.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Plaintiff's Motion to Remand (#15) be GRANTED.

IT IS FURTHER RECOMMENDED that Defendant's Cross Motion to Affirm (#16) be DENIED.

IT IS FURTHER RECOMMENDED that the ALJ's decision, adopted by Defendant, be remanded for further administrative proceedings to determine whether Plaintiff has mild mental limitations that must be posed as part of the hypothetical to a Vocational Expert.

IT IS SO RECOMMENDED.

DATED this 24th day of April, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE